IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>(1) Juan Alberto Rosales Valenzuela;<br>(2) Rogelio Umberto Cota-Valenzuela,<br><br>    Defendants. | CR 04-00677-TUC-FRZ(CRP)<br><br>**REPORT AND RECOMMENDATION** |

Defendant Juan Rosales-Valenzuela filed a Motion to Suppress Statements. Defendant Rogelio Cota-Valenzuela filed a Motion to Suppress Search of the Residence. The Government opposes both motions. This Court recommends that the Motion to Suppress Statements be denied, with one exception, and the Motion to Suppress the Search of the Residence be denied.

FACTS

Beginning on the afternoon of February 25, 2004, Immigration and Customs Enforcement (ICE) Special Agents were conducting surveillance on a suspected "stash house" at 1861 Arroyo Vista, Tucson, Arizona. The following morning, the agents decided to do a "knock and talk." As the agents approached the residence, Rosales-Valenzuela (a.k.a. Ramon Enrique Gil) was leaving the house and was stopped by agents next to the driveway

1  of the house. Agents smelled marijuana and noticed marijuana debris on Rosales-
2  Valenzuela's sweatshirt. While outside the house, Rosales-Valenzuela told the officers that
3  he did not own the house, but was only hired to clean it. By nodding his head affirmatively,
4  Rosales-Valenzuela confirmed there was marijuana in the house. Rosales-Valenzuela was
5  handcuffed for officer safety reasons, but was not under arrest.

6  At the same time, Special Agent Angel Nieves approached the front door for the
7  "knock and talk." After Nieves knocked on the metal screen door a couple of times,
8  Defendant Cota-Valenzuela responded. Nieves testified Cota-Valenzuela stepped outside,
9  told Nieves he was not the owner of the house, but had been "living" there since the night
10 before. Nieves also testified that he asked Cota-Valenzuela in Spanish for permission to
11 enter the house, and Cota-Valenzuela said it was okay to go into the house.

12 Nieves and Agent Hillis immediately went into the house and within a couple of
13 minutes found the many bundles of marijuana in the master bedroom. Both Rosales-
14 Valenzuela and Cota-Valenzuela were then placed under arrest and escorted to the living
15 room of the house. Agent Acevedo searched Rosales-Valenzuela. At that time, Rosales-
16 Valenzuela repeatedly made statements denying involvement with the marijuana, and said
17 he was leaving the bouse because he had just been made aware of the marijuana. Acevedo
18 testified Rosales-Valenzuela was not being questioned when he made these statements.
19 Rosales-Valenzuela complained of feeling ill and asked what he needed to do to be released.
20 Acevedo told Rosales-Valenzuela he needed to be truthful and tell the agents who was going
21 to pick up the marijuana. Rosales-Valenzuela told Acevedo that Jesus would be arriving, but
22 he would not stop if all the cars were there.

23 Subsequently, Rosales-Valenzuela and Cota-Valenzuela were transported to the
24 Immigration Office. There, for the first time, they were read their Miranda rights, almost
25 three hours after their initial contact with ICE agents. Rosales-Valenzuela invoked his rights
26 at that time.

27 . . . . . . . .

28

Cota-Valenzuela testified at the evidentiary hearing.  Cota-Valenzuela testified that Nieves asked for permission to enter the house, and that Cota-Valenzuela told Nieves he could not come in because Cota-Valenzuela did not own the house.  Cota-Valenzuela testified he stepped back a little bit and Nieves and Hillis opened the door and entered the house.  Cote-Valenzuela conceded he was convicted six years ago of a felony, possession with intent to distribute marijuana, in a case before U.S. District Judge Frank R. Zapata.

ICE Special Agent Mike Hillis testified on rebuttal.  Hillis testified he understands a little Spanish and was present when Nieves asked Cota-Valenzuela for consent to search the home.  Cota-Valenzuela answered in the affirmative.  Cota-Valenzuela was not standing in from of the door, so Hillis and Nieves immediately entered the residence after Cota-Valenzuela voiced his consent.  No written consent was obtained.  Agent Hillis testified he usually does not use the written consent form.

MOTION TO SUPPRESS STATEMENTS

There are two issues dispositive of this motion.  First, when was Rosales-Valenzuela in custody and secondly, when was he interrogated?  Rosales-Valenzuela was not in custody when he made statements to Acevedo out by the driveway.  Therefore, the lack of Miranda warning at that time is irrelevant.  Nor is there any indicia that those statements were involuntarily made.

Once taken to the living room, Rosales-Valenzuela was in custody.  However, no testimony or evidence was presented to show that anyone was questioning Rosales-Valenzuela at the time.  Up until the time Agent Acevedo told Rosales-Valenzuela that he needed to tell the truth about who would pick up the marijuana, the statements made by Rosales-Valenzuela were spontaneous utterances on his part and thus admissible.

Rosales-Valenzuela's statement, that Jesus was coming and he would not stop because of all the cars in from of the house, was in response to Acevedo's inquiry, and while he was in custody.  Miranda warnings had not yet been presented to Rosales-Valenzuela .  This
. . . . . . . .

1 statement should be suppressed. The other statements by Rosales-Valenzuela should not be
2 suppressed.

3 MOTION TO SUPPRESS SEARCH OF RESIDENCE

4 The key issue in this motion is whether consent to search the house was given by
5 Cota-Valenzuela, and if so, whether that consent was limited in any way. Here, Government
6 witnesses testified consent was given. Defendant testified he did not give consent. The
7 Court found the testimony of the Government witnesses more credible.

8 In resolving this critical credibility dispute between Nieves and Cota-Valenzuela, the
9 Court finds three factors particularly significant. First, Cota-Valenzuela testified, consistent
10 with the testimony of Nieves and Hillis, that he backed up and out of the way when he was
11 asked for consent to enter the house. This physical action would be inconsistent with a
12 verbal denial of consent to enter the house. Secondly, Agent Hillis confirmed the testimony
13 of Agent Nieves. While Hillis does not speak Spanish, it is credible that he understands
14 enough Spanish to confirm that consent was given by Cota-Valenzuela to Nieves. Third,
15 Cota-Valenzuela's prior felony conviction adversely affects his credibility. Rule 609(a),
16 Federal Rules of Evidence.

17 There was no evidence presented that the consent was limited in any way. Obviously,
18 consent in this instance was obtained in the briefest of discussions. Nonetheless, the Court
19 finds that general consent was given by Cota-Valenzuela to Nieves and Hillis to search the
20 house.

21 On the issue of apparent authority to consent, Cota-Valenzuela said he had been
22 residing there since the night before. Defendant, in his motion, conceded that the house in
23 question was his personal residence in order to establish standing to bring the motion.
24 Motion to Suppress Search of Residence, p.3, 12-13. Here the evidence was sufficient to
25 establish that Cota-Valenzuela had apparent authority to consent to the search.

26 For these reasons, the Motion to Suppress Search of the residence should be denied.
27 . . . . . . . .
28 . . . . . . . .

CONCLUSION

For the reasons set for in this Report and Recommendation, this Court recommends that the District Judge, after his independent review and consideration, enter an order as follows:

1. Deny the Motion to Suppress Statements, except as to the statement that Jesus would be arriving soon.

2. Deny the Motion to Suppress Search of Residence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CR 04-00677-TUC-FRZ.

DATED this 22nd day of December, 2005.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

FRZ
CRP
AUSA: Beverly K. Anderson, Esq.
ATTY: Homero Torralba, Esq.
ATTY: Stephen G. Ralls, Esq.